UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ERIC HENRIKSON, an individual;
IRIS KIEVERNAGEL, individually
and as administrator of the
estate of JOSEPH KIEVERNAGEL;
PATSY KIEVERNAGEL; JOSEPH
KIEVERNAGEL; and KATHLEEN
HAMILTON and THOMAS BLOUNT,
individually and as successors
in interest to the estate of
KEVIN BLOUNT,

         NO. CIV. S-06-1563 WBS DAD

    Plaintiffs,

  v.                    MEMORANDUM AND ORDER RE:
                       MOTION TO INTERVENE

TURBOMECA, S.A., a French
corporation; LA SOCIÉTÉ
ANONYME TURBOMECA FRANCÉ, a
French corporation; TURBOMECA
USA, a Texas corporation; and
TURBOMECA ENGINE CORPORATION,
a Texas corporation,

    Defendants.

----oo0oo----

        Plaintiffs brought this action against defendants
Turbomeca, S.A., a French corporation, La Société Anonyme
Turbomeca Francé, a French corporation, Turbomeca USA, a Texas
corporation, and Turbomeca Engine Corporation, a Texas

1

corporation (together "Turbomeca"), alleging that Turbomeca defectively designed and manufactured a helicopter engine component which led to a helicopter crash that killed two passengers and seriously injured a third. The County of Sacramento ("County") now seeks to intervene as a plaintiff pursuant to Federal Rule of Civil Procedure 24(a).[1]

I.  Factual and Procedural Background

The Sacramento County Sheriff's Department owned and operated a Eurocopter EC-120-B single-engine helicopter known as "Star VI." (Compl. ¶ 57.) The Star VI was powered by an Arrius 2J engine, serial number 34144, containing a fuel control unit ("FCU"), numbered 147-B, manufactured by the French Turbomeca corporations. (Id. ¶ 54.) The FCU 147-B contains a part known as a "constant delta-P valve diaphragm," which acts as a seal between two differently-pressured fuel chambers in the engine. (Id. ¶ 41.) Damage to the diaphragm can result in an excessive delivery of fuel to the engine, which can cause overheating and additional serious engine problems. (Id. ¶ 42.)

On July 13, 2005, the Star VI experienced an engine malfunction, which caused the helicopter to crash. (Id. ¶ 77.) Sheriff's Deputies Joseph Kievernagel and Kevin Blount were killed in the crash. (Id.) Sheriff's Deputy Eric Henrikson survived, but sustained severe and disabling injuries. (Id.)

On July 13, 2006, plaintiffs Deputy Eric Henrikson, Iris Kievernagel (Joseph Kievernagel's widow), individually and as administrator of the estate of Deputy Joseph Kievernagel,

---

[1] The County does not move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

2

Patsy Kievernagel (Joseph Kievernagel's mother), Joseph Kievernagel (Joseph Kievernagel's father), Kathleen Hamilton (Kevin Blount's mother) and Thomas Blount (Kevin Blount's father), individually and as successors in interest to the estate of Deputy Kevin Blount, (together "plaintiffs"), filed a complaint against defendants alleging: 1) strict liability--defective design and manufacture; 2) strict liability--failure to warn; 3) negligence--design, manufacture, and installation; 4) negligence--failure to warn; 5) breach of implied and express warranty; and 6) fraud.  Plaintiffs contend that defendants incorrectly installed the diaphragm inside-out in the FCU 147-B engine, which caused it to deteriorate over time and eventually rupture, thus causing the crash.  On June 11, 2007, the County filed this motion for leave to intervene.  All plaintiffs and defendants oppose intervention.

II. <u>Discussion</u>

An order granting intervention as a matter of right is appropriate if the party seeking to intervene can demonstrate that "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." <u>Donnelly v. Glickman</u>, 159 F.3d 405, 409 (9th Cir. 1998) (citing <u>Cabazon Band of Mission Indians v. Wilson</u>, 124 F.3d 1050, 1061 (9th Cir. 1997), <u>cert</u>. <u>denied</u>, 524 U.S. 926 (1998)); Fed. R. Civ. P. 24(a). A proposed intervenor "bears the burden of showing that all the

3

requirements for intervention have been met." <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004).

In determining whether intervention is appropriate, the Ninth Circuit has held that courts are to be "guided primarily by practical and equitable considerations." <u>Donnelly</u>, 159 F.3d 409; <u>United States v. Stringfellow</u>, 783 F.2d 821, 826 (9th Cir. 1986). Courts are to "take all well-pleaded nonconclusory allegations in the motion to intervene . . . as true absent sham, frivolity or other objections," <u>Southwest Center for Biological Diversity v. Berg</u>, 268 F.3d 810, 820 (9th Cir. 2001), and "generally interpret the requirements broadly in favor of intervention," <u>United States v. Washington</u>, 86 F.3d 1499, 1503 (9th Cir. 1996).

A.   <u>Timeliness</u>

Timeliness of a motion to intervene depends on three criteria: 1) the current stage of the litigation; 2) the possible prejudice to other parties; and 3) the reason for any delay in moving to intervene. <u>Idaho Farm Bureau Fed'n v. Babbitt</u>, 58 F.3d 1392, 1397 (9th Cir. 1995); <u>United States v. Oregon</u>, 913 F.2d 576, 588 (9th Cir. 1990), <u>cert</u> <u>denied</u>, 501 U.S. 1250 (1991). All three factors weigh against the County's intervention.

1.   <u>Current Stage of the Litigation</u>

A significant amount of litigation has occurred in this case. On October 23, 2006, defendants filed motions to strike portions of plaintiffs' complaint. (Docket No. 27.) On December 13, 2006, the court granted defendants' motion in part. (Dec. 13, 2006 Order.) On January 19, 2007, defendants answered the complaint. (Docket Nos. 39-40.) Since that time, the parties have been engaged in discovery. Throughout May and June of 2007,

4

plaintiffs and defendants conferred and agreed upon the terms of conducting discovery. (P. Mastagni Decl. ¶ 7.) The parties have exchanged over 11,000 pages of discovery and one interactive DVD. (Id. ¶ 10.) Discovery is to be completed by January of 2008. (Feb. 6, 2007 Order.) Although trial is a year away, the fact that this litigation has progressed well beyond the pleading stages weighs against the County's motion.

        2.   Prejudice to Current Parties

Both plaintiffs and defendants argue that the County's intervention would prejudice them. Plaintiffs cite League of United Latin American Citizens v. Wilson, 131 F.3d 1297 (9th Cir. 1997), for the proposition that when "a lot of water had already passed underneath [the] litigation bridge," a motion to intervene is properly denied. Id. at 1303. In Wilson, intervenors sought intervention after the district court had issued a preliminary injunction, certified a class, discovery had proceeded nine months before being suspended, and a summary judgment motion had been heard. Although not as much water has passed under the litigation bridge in this case, there has been a fair amount of work done heretofore. The court has adjudicated defendants' motion to strike portions from plaintiffs' complaint. The deadline for plaintiffs to amend their complaint to add additional parties or causes of action has passed. (Id.) While the court would entertain amendments with good cause, the pleadings have been basically set and all pre-answer motions have been litigated.

If the County is permitted to intervene, the pleadings would have to be reopened and defendants' pre-answer motions re-

5

litigated with respect to the County's complaint in intervention. More importantly, the parties have also agreed upon the terms of foreign discovery and schedule of the depositions to take place in France in August and September of 2007. (P. Mastagni Decl. ¶¶ 7-8.) This is particularly significant in light of the fact that such discovery is beyond the subpoena power of this court. The parties would be prejudiced if they had to reopen those matters due to the County's intervention. Further, the discovery schedule would likely be delayed and the trial date of August 12, 2008, may have to be continued. Although the prejudice to the parties here is not as significant as in Wilson, this factor weighs against intervention.[2]

### 3. County's Reason for Delay

The County argues that it made this motion within a reasonable time after it determined that an agreement could not be reached with plaintiffs' counsel for reimbursement of its expenditures in this litigation. (Mot. to Intervene 3:15-19.) Although a delay in seeking intervention is not, in and of itself, determinative, "[a] party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, 309 F.3d 1113, 1120 (9th Cir. 2002) (further citations omitted). "'Courts generally have been reluctant to allow intervention when the applicant appears to have been aware of the

---

[2] In its reply, the County argues that denial of its motion would prejudice the County. However, the standard for timeliness is prejudice to other parties, not prejudice to the intervenor. Idaho Farm Bureau Fed'n, 58 F.3d at 1397.

6

1  litigation but has delayed unduly seeking to intervene.'"
2  Wilson, 131 F.3d at 1304 (quoting Charles Alan Wright, Arthur R.
3  Miller & Mary Kay Kane, 7C Federal Practice and Procedure: Civil
4  2d § 1916, at 430 (1986)).
5         The County has been aware of the potential for civil
6  suits since the July 13, 2005 accident because the accident
7  involved its employees.  On December 9, 2005, plaintiff Eric
8  Henrikson filed a worker's compensation claim.  The County began
9  workers' compensation payments to the injured and deceased
10 workers and families at some point shortly after the accident,
11 and has paid more than $2,000,000.00 in claims thus far.  (Mot.
12 to Intervene 5; Proposed Intervenor Compl. ¶¶ 22-24.)  Further,
13 on May 15, 2006, the County's attorney, Charleton S. Pearse,
14 wrote a letter to one of plaintiffs' counsel, David P. Mastagni,
15 stating that he represented the interests of the County in
16 connection with their claims for reimbursement of workers'
17 compensation benefits.  (Pearse Affidavit Ex. B.)  At that time,
18 Mr. Pearse wrote that the County "will intervene in the action to
19 be initiated by your office on behalf of Mr. Henrikson" and that
20 the "intervention will take place near simultaneously and
21 certainly immediately after you have filed."  (Id.)  On October
22 18, 2006, the County filed three applications for liens with the
23 court relating to its worker compensation reimbursement claims
24 pursuant to the California Labor Code § 3586, et seq.  (Docket
25 Nos. 23-25.)
26         There was no reason the County could not have filed its
27 action at the same time plaintiffs filed their complaint against
28 defendants on July 13, 2006.  The County argues that the primary

7

reason for the delay was negotiation with plaintiffs' counsel.[3] However, the record submitted with Mr. Pearse's affidavit indicates that the last communication between County's counsel and plaintiffs' counsel occurred November 27, 2006. (Pearse Affidavit Ex. H.)  More importantly, an intervenor's desire to delay action to see if it could avert litigation and discovery costs does not excuse its delay. United States v. Alisal Water Corp., 370 F.3d 915, 924 (9th Cir. 2004) ("An applicant's desire to save costs by waiting to intervene until a late stage in litigation is not a valid justification for delay.  To hold otherwise would encourage interested parties to impede litigation by waiting to intervene until the final stages of a case." (citations omitted)).  Because the County was fully informed of this pending action, waited over six months after negotiations with plaintiffs' counsel broke down to move to intervene, and applied for liens seven months prior to its intervention motion, the court does not find the County's reason for the delay persuasive.

---

[3] In its reply, the County additionally argues that the California statutory regime governing industrial personal injuries specifically allows intervention up to the time of trial.  Cal. Lab. Code § 3853 ("If the action is brought by either the employer or employee, the other may, at any time before trial on the facts, join as party plaintiff or shall consolidate his action, if brought independently.") However, it is well established that the Erie doctrine does not apply to procedural rules. Hanna v. Plumer, 380 U.S. 460 (1965). Accordingly, California's more permissive standard for intervention as a matter of right is not controlling in federal court.  McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1070 (5th Cir. 1970) (the timing and manner of the intervention is purely a matter of federal law).  Moreover, the court could not possibly accept ignorance of federal procedural law as an excuse for an unreasonable delay.

8

Because all three factors weigh against a finding of timeliness, the court concludes that the County's motion was not timely filed. Accordingly, the court will deny the County's motion. See United States v. Washington, 86 F.3d 1499, 1503 (9th Cir. 1996) ("If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." (citing United States v. Oregon, 913 F.2d 576, 588 (9th Cir. 1990), cert. denied, 501 U.S. 1250 (1991))). Some observations with respect to the remaining elements are nevertheless in order.

B.   Adequate Representation of the County's Interest

The County argues that plaintiffs would not adequately represent its interest since "any settlement amount would likely represent an aggregate sum of both general and special damages without apportionment" so that plaintiffs would "earmark most if not all of the money received from [d]efendants towards general damages and minimize the amount of moneys which [i]ntervenor has a statutory right to receive." (Mot. to Intervene 6:28-7:5.) However, even though the court denies intervention now, it is not thereby precluded from considering another motion to intervene prior to the distribution of any fund created by settlement or judgment. See Olden v. Hagerstown Cash Register, Inc., 619 F.2d 271, 273 (3d Cir. 1980) ("In responding to the carrier's contention that at some time in the future plaintiff's counsel would attempt to compromise the compensation lien, the court observed that, at the stage then existing, both the plaintiff and the carrier were seeking the largest recovery possible, and the company could protect its interests in informal settlement

9

negotiations." (affirming district court's denial of motion to intervene)).

Here, counsel for all of the parties have specifically expressed no objection to the County entering the case after either a verdict or a settlement had been reached. (I. Kievernagel, Henrickson, Hamilton, & Blount Pls.' Opp'n to Mot. to Intervene 23.) Further, a motion to intervene made within a reasonable time after notice of settlement or judgment would not suffer from the untimeliness of the present motion. Such a motion would not unduly prejudice the parties by delaying the discovery and trial phases of the litigation.

   C.   <u>Broadening the Scope of the Litigation</u>

While the County's proposed complaint in intervention arises from the same occurrence, i.e. the July 13, 2005 accident, and seeks to protect its workers' compensation lien, the County also proposes to bring additional claims for breach of contract (between the County and defendants) and property damage. That would complicate this case. At the hearing on its motion, the County agreed to drop its claims for breach of contract and property damage if its motion to intervene were to be granted. However, the County has brought its own separate action containing its breach of contract and property damage claims,[4] and has not agreed to dismiss that action.

The more sensible approach, in the court's view, is to allow the County to go forward with its separate action against defendants, and to consider consolidation of the actions at such

---

[4] <u>County of Sacramento v. Turbomeca, et al.</u>, Civ. No S-07-1398.

10

1 | later time as any of the parties might so move.
2 |             IT IS THEREFORE ORDERED that the County of Sacramento's
3 | motion for leave to intervene be, and the same hereby is, DENIED.
4 | DATED:  July 27, 2007

*[signature]*

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE